**J. U. CLEMENTS et al., Appellants,**

v.

**CITY OF CORPUS CHRISTI, Appellee.**

No. 625.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 9, 1971.

Rehearing Denied Sept. 30, 1971.

Porter, Taylor & Gonzalez, Rick Rogers, Corpus Christi, for appellants.

Office of the City Attorney, Richard Bradshaw, Asst. City Atty., Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit brought by appellants, as property owners, for a temporary injunction to prevent the City of Corpus Christi from enforcing a paving assessment for improvements upon a street within the city. The suit also sought to remove the lien against the property of the appellants and to remove the cloud cast upon their property as a result of such lien. The trial court denied the injunction and the property owners have appealed.

The City of Corpus Christi passed an ordinance authorizing paving assessments on a number of streets in the city, including property along Linda Vista Drive. This ordinance authorized the levying of paving assessments against property "abutting" upon the streets to be improved. The appellants are all property owners of Lots 12 through 55 of Block 3 in the Southwest Industrial Park Subdivision. This subdivision generally lies between Padre Island Drive on the south and Linda Vista Drive on the north.

The Southwest Industrial Park Subdivision is a 22.3 acre subdivision, zoned for light industry. At the time that the appellants and/or their predecessors in title sought approval of their plat to permit industrial zoning, the Zoning and Planning Commission set forth certain restrictions and requirements as a condition to the approval of the plat and the subsequent zoning. These requirements included among others, building set back lines on lots facing Padre Island Drive, an eight-foot screening easement on the north side of the subdivision, and a notation to be printed on the plat that no ingress or egress to Linda Vista Drive from Block 3 was to be permitted. This eight-foot screening easement runs along the north side of the subdivision and adjacent to Linda Vista Drive.

Appellants argue that there were two questions to be considered by the trial court: (1) Whether or not the property in question (Lots 12 through 55 of Block 3 of the Southwest Industrial Park Subdivision) "abut" as a matter of law to Linda Vista Drive so as to authorize the assessment provided by Article 1105b, Sec. 4,

Vernon's Ann.Civ.St.; and (2) if the lots do abut Linda Vista Drive, then whether or not the improvements (paving) to Linda Vista Drive sufficiently enhanced the value of appellants' property so as to authorize the assessment and subsequent lien to exist on the property. The question of "enhanced value" was not presented to the court and was waived. The only question on appeal is whether or not the property as a matter of law abuts Linda Vista Drive within the meaning of the Statute.

Article 1105b, Sec. 6, V.A.C.S., provides in part as follows:

"Subject to the terms hereof, the governing body of any city shall have power by ordinance *to assess* all the cost of constructing, reconstructing, repairing, and realigning, curbs, gutters, and sidewalks, and not exceeding nine-tenths of the estimated cost of such improvements, exclusive of curbs, gutters, and sidewalks, *against property abutting upon the highway or portion thereof ordered to be improved, and against the owners of such property*, and to provide the time, terms, and conditions of payment and defaults of such assessments, and to prescribe the rate of interest thereon not to exceed eight (8) per cent per annum. * * *" (emphasis supplied).

The testimony of the senior planner for the Planning Department of the City of Corpus Christi was to the effect that this particular subdivision faced Padre Island Drive on one side and Linda Vista Drive on the north. Across the street from Linda Vista Drive was a residential subdivision. Since the proposed use of the subject subdivision was for light industry, a screening easement was required to protect the residential area from the light industry. The City also required at the time of approval of the plat, that no ingress or egress be permitted on Linda Vista Drive as a condition for approval of the plat. The planner stated that the City gave the industrial zoning to the tract, provided the property own-

ers would screen off this part of their property from their residential tract across street north from them. The witness stated that this type of screening easement and restriction against access is done normally in cities where residential property backs up to major streets or to this type of zoning. The restrictions as to access were placed on property that backs up to, or on the side of the property that is next to, major arterial streets so that there are not a number of driveways entering major streets that might hinder the flow of traffic. The sole purpose for such restrictions as to access was for traffic safety. The witness testified that the screening easement was for the benefit of the residential houses across the street in the adjoining addition and did not benefit the subject property. It was clear from the witness' overall testimony, that the proposed plat for the purpose of an industrial subdivision would not have been approved unless as a condition precedent, the property owners agreed to provide for the screening easement and agreed further that no ingress or egress would be permited on Linda Vista Drive. The testimony was that the screening was in the nature of a chain link fence with interlacing wood strips. This fence had blown down three times since it was originally erected and the oleanders planted along the fence had all died because of watering problems. At the time of the hearing the fence was lying on the ground.

Appellants admit that the lots physically touch the street improvement. They argue that the existence of the screening easement and the denial of the access to the street improvement makes the street nonabutting to their property within the meaning of Article 1105b as a matter of law. We disagree.

"The term 'abutting owner', when used in relation to highways, ordinarily refers to one whose land actually adjoins the way, although it is sometimes used loosely without implying more than a close proximity. * * *"

This was the definition given by the Supreme Court in State v. Fuller, 407 S.W. 2d 215 (Tex.Sup.1966). It is substantially the same definition as is given by Black's Law Dictionary, Fourth Edition. Webster's Seventh New Collegiate Dictionary defines "abut": "to touch along a border or with a projecting part, (land abuts on the road); to terminate at a point of contact; to border on; touch."

Justice Denton, now of the Texas Supreme Court defined abutting property as " * * * property between which and the improvement for which the assessment is made there is no intervening land, and hence if a parcel of land is separated from the improved street by other land, it is not abutting property. * * * " Municipal Investment Corporation v. Triplett, 371 S.W. 2d 124 (Tex.Civ.App.—Amarillo 1963 n. r. e.).

The testimony and exhibits introduced at the trial of the case established conclusively that appellants' property is adjacent to and touches Linda Vista Drive. Appellants are the fee owners of each lot up to the point where it touches the street. This is so even though the lots are burdened with easements such as the screening easement and a utility easement. This does not, however, create an actual physical separation from the improved street. No other property belonging to any other individual adjoins the way except appellants' property. The appellants as fee owners of the land have the right of full dominion and use of the land so long as it is not inconsistent with the easements granted. These easements represent a charge on this portion of their property and no more. 21 Tex.Jur.2d, Easements, Sec. 1, p. 41.

■ The appellants contend that the true basis for deciding whether or not their property abuts the street improvement, is "access". Art. 1105b, V.A.C.S., does not prescribe such a test. It permits the governing body to assess a certain percentage of the estimate cost of constructing the improvements "against property abutting upon the highway or portion thereof, ordered to be improved, and against the owners of such property" so long as the improvement enhances the value of the land to the extent that is set out in the statute. The presumption of enhancement in value in this case remains unchallenged.

The appellants rely upon Schiff v. City of Columbus, 4 Ohio App.2d 234, 211 N. E.2d 917. This case is distinguishable upon the facts. A planting strip and a residential service road were intervening strips separating the subject property and the improvement on the highway. Appellants refer us to the excellent discussion on special assessments and abutting property, found in 97 A.L.R.2d 1079, et seq. Our research indicates that in all of the cited cases holding that the property was nonabutting, there was some intervening tract of land. There has not been any case cited to us that is contrary to the majority rule that a geographic abutment is an abutment for assessment purposes.

■ The appellants' construction of what constitutes an abutting property owner, would require us to place a strained construction upon the common and ordinary meaning of the word "abut". Since the Legislature did not set out to define "abutting" in Article 1105b, we must follow the rule of statutory construction which requires us to give the words in such statute their common and ordinary meaning. Satterfield v. Satterfield, 448 S.W.2d 456 (Tex.Sup.1969).

Because of the disposition we make of this appeal, it is not necessary for us to consider appellee's first counterpoint or appellee's cross-point that the trial court erred in overruling their motion to dismiss this suit.

Judgment of the trial court is affirmed.

SHARPE, J., not participating in ruling on motion for rehearing.